Your Honors, may it please the Court, I'm Jim Tree representing Lisa Miller on this matter. A Social Security disability claim that is under the fourth step of the sequential evaluation is the primary issues in this case, and have been throughout the dependency of this case. In this particular case, Judge Dethloff had made a finding that Ms. Miller could return to her past work, singular past work that he found that she could return to was made. Ms. Miller had had 15 different jobs in her young life. She was only in her early 30s at the time of the hearing because of a severe personality disorder. She had worked at eight different maid jobs. And the record is replete with incidences where she is unable to deal with the public, have interpersonal relationships with other people, even on a superficial basis. As I understand the heart of your argument, at least at the fourth step, it's primarily that the ALJ in his decision didn't adequately account for his statements or findings in the psychiatric review technique form that was attached to his opinion. He makes the reference to often, I forget exactly the exact language. Yeah, often having deficiencies of concentration. Right. And that in his decision, in his analysis at step four, he fails to adequately account for that assessment. That is one of our. Isn't that the heart, though, of your argument at step four? I don't think so. I don't think it's the heart of it, but I think it's an important component of it. Because, first of all, the ALJ finds that Ms. Miller often has these deficiencies that result in failure to complete tasks in a timely manner. The only vocational expert evidence in the file is a report from a vocational expert of 13 years experience, Mr. William Wright. The ALJ completely discredits Mr. Wright. Yeah. He used the wrong standards. Right. And, you know, the question, I guess, is often whether it's a term of art or not in order for something to be sometimes the government argues. And one district court has apparently accepted is that a term of art needs to be defined. And there is no where where the term of where often is defined in the social security regulations. The social security rulings are on their PRTF. They don't define it. So it can't be a term of art. Many other courts have ruled that it's not a term of art because it's not defined. And therefore, you know, that is a critical part of our case. What's the other primary part of your case at step four? Well, the other part of step four is that the judge made findings that the two state agency psychologists that reviewed the case, that he was completely adopting their findings. He agreed completely with what they had to say. And they said that she has seven different mental moderate mental residual functional capacities. I think a real critical part of it is where the judge at the record of twenty three. He said she was seen by an examining board certified psychiatrist, Dr. C. Donald Williams, who said that her personality disorder was very severe and that it would markedly limit her ability to interact with other people. And very markedly. In fact, that's what Dr. Williams said. At the record of twenty three, Judge Defloff says Dr. Williams says that she must have a solitary work environment. Well, made isn't solitary work environment. By the D.O.T. definition, you serve patrons. People come into the hotel. You have to help them. There was testimony at the hearing from a co-worker who was her husband that worked at the hotel that she did that she had to interact with the head maid and other maids and she frequently was in conflict with them because of her personality disorder. This was the hotel made. This was the. This is not a housekeeping cleaning or what. What is she. What. What was the maid's work. The maid's work was to go in and clean the room to deal with deal with patrons. For example, if they need additional towels, they need help with their room. When they're in the room, she's in the room with them. There was a problem with her concentration. Definitely. What was the. The finding of the LJ on the matter of concentration. The LJ found that she often had deficiencies of concentration, persistence or pace resulting in a 30 completion task in a timely manner. That was his finding. He agreed completely with the DDS physicians. But now there's a whole body of cases on often. And we're not arguing that just because a person often has deficiencies of concentration, they should be found disabled, because that would mean they met the listings. And we don't argue that this is a step for a step for. We argue that they have to have vocational expert testimony or that we have to have. We have some burden to come forth with evidence that she can't work with that limitation. In fact, we did in this case, we had a 13 year vocational expert that came forward and said that they couldn't work. That is not inconsistent with many other cases that are reported. There are in our briefs. There are many other cases where vocational experts have given the exact same testimony. And of course, there was a there was a case where there was no vocational expert testimony. And the attorney argued, well, every case I've been in where I've asked a vocational expert that they said there's no jobs they could do. Of course, as well, that may be true and make sense, but we can't accept that. So they remanded it for further fact finding because there wasn't that evidence. But in every case where there's been evidence in the file, they've awarded benefits. Let me ask you what the government says. In response to the ALJ's finding in that attachment to his decision, is that the ALJ also found that she was able to perform unskilled work, implying that the nature of unskilled work didn't require the kind of concentration that he was talking about in his assessment, in his psychiatric assessment? What's wrong with that? Well, there's a couple things wrong with it. First of all, there's contrary vocational expert testimony to that. That's to Mr. Wright you're talking about. To Mr. Wright, yes. Second of all, what's wrong with that is that there's been many cases that have said the fact that somebody cannot complete a task in a timely manner is quite different than whether or not they can do unskilled work. There's no question she could do unskilled work. The question is, can she sustain it and what pace she can do it and how often she's going to have deficiencies? And what's the result? What's the vocational effect of her often having deficiencies that result in failure to complete tasks in a timely manner? Well, Mr. Wright said the result was she couldn't be, couldn't do unskilled work with that. And so that's the only evidence we have in this case on the vocational issue. And the judge provided no standard for rejecting, appropriate standard for rejecting Mr. Wright's statement. The other, I think, real important issue that I have that I wanted to make on this is that the ALJ made some very detailed findings that the reviewing doctors at the state agency who never saw Ms. Miller, but he said they were experts in the disability process and I completely adopt their findings. He went on to say that Dr. Williams said that she needed to work in a solitary work environment. It wasn't Dr. Williams that said that. It was Dr. Brown, the state agency physician, said she needed to work in a solitary work environment. That's critical because he adopted completely Dr. Brown's findings. He implied in his decision at 23, well, she couldn't work as a maid if she needed to work in a solitary work environment. I mean, the DOT tells us that there's coworkers, there's supervisors, there's interaction with patrons. You have to provide assistance to patrons, so we know that's not true. But the very person that he said he was an expert and he adopted all of their findings, that was Dr. Brown. And Dr. Brown's the one, not Dr. Williams, that said she had to work in a solitary work environment. And so that's another reason we think that's very important in this case for an award of benefits. You've got about a minute and a half. You want to reserve it? I'd like to reserve that. Thank you, Your Honor. I will. Good morning, Your Honors. May it please the Court. Richard Rodriguez on behalf of the Commission of Social Security. This case is fairly simple. It revolves around whether or not the ALJ did a proper assessment at Step 4 of the sequential evaluation. The Commissioner contends that he did so, that he formulated a highly detailed residual functional capacity assessment, that he properly described the claimant's past relevant work and the functional limitations that were functional requirements of that job, and that he properly compared the RFC that he found and those functional requirements to find that the appellant could do her past relevant work as a hotel maid.  That's it. Well, how about the psychiatric review technique form? I have a hard time remembering the title of that document, but in functional limitation and degree of limitation, he marks deficiencies of concentration, persistence, or pace resulting in failure to complete tasks in a timely manner in work settings or elsewhere, and he checks the box often. That's a severity rating, Your Honor. Right. It is not a limitation. Social Security Ruling 96-8P actually instructs the judges not to include those limitations in the mental residual functional capacity. It would be error for the judge to do so. He has to formulate a more specific MRSA, mental residual functional capacity. I'm sorry? He has to complete a what? A more specific mental residual functional capacity. He has to detail what the limitations are to support that often finding on the PRT. Okay. Point me to the findings in his decision that support often. In the excerpt of record, page 31. Hold on. Hold on. What page? 31. Okay. Okay. Where he sets forth his, the RFC. He finds that the plaintiff would be capable of a moderate, limits her to interaction with the public, coworkers or supervisors that she's. Is this one of these numbered findings? Yes, finding number 6. Number 6? Number 6. It's finding number 6. And that she's capable of superficial contact and cooperation, but not close, frequent interpersonal interaction. How does that correlate to often? Well. Explain to me. That she can also perform tasks which are not detailed or require concentration in excess of two hours at a time. So those are the two, actually, the last two. So that that is that addresses that she's often. She has deficiencies of concentration, persistence or pace resulting in failure to complete tasks in a timely manner. Often. Yes. And this finding addresses that. That finding accommodates that finding. How about in his decision? In his decision, on page 29. Okay. I got it right here. Past relevant work. Of the excerpts. Of the excerpts. Yes. Yes. I have them. And he notes that the limitations that he's. Last paragraph. Limitations would not have a significant effect on claimant's ability to perform unskilled work. So in unskilled work, the fact that one has this often has these problems, these deficiencies, as he described in his psychiatric review form, is accounted for by his finding that these limitations would not have a significant effect on claimant's ability to perform unskilled work. That's correct, Your Honor. So because she's capable of performing unskilled work, these limitations have no effect on that. Only minimal. And that she would be able to persist and maintain, as in fact she did as a motel motel maid. You know, I don't know about you, but, you know, the last time I was a hotel, you know, these maids seem to be under pressure to get their work done in a timely way. Do you think that that might have any impact on her ability to concentrate and get her work done in a timely manner? I don't believe so. There was testimony during the hearing that where she stated that when she was asked to pick up the pace, that she was able to do so. She didn't like to do it, but she was able to do it. And there were times when she was asked to help out other maids who were behind, and she did that as well. But while there may be some element of that, I believe that the evidence in the record shows that she was able to maintain that concentration, persistence in pace, and complete her job. Thank you. Any further questions? No. All right. Mr. Rodriguez, thank you. Mr. Obama. The testimony at the hearing was, in fact, from her husband who worked with her, was that the head maid was often on her case because she didn't keep up her pace. She didn't have the pace to be able to keep up with it. She had eight different hotel maid jobs. She had 15 different total jobs. She had a severe personality disorder. Dr. Brown. Did her husband work at the hotel, too? Yes. He was a maid, too. He worked at the front desk. He worked at the front desk. Yes. And it wasn't a large hotel, but it was in Yakima, Rio Morada. He, at 255 in the record, that's where Dr. Brown says, the claimant does have a personality disorder and poor social skills that would limit work to a solitary setting. The judge says he adopts what Dr. Brown said in the case. Pinto, I think, applies in this case because the judge failed at all three phases of three-step analysis. He didn't make proper RFC findings. He failed to mention the seven moderate mental limitations that he said that Dr. Brown said he accepted, but he failed to account for those. He failed to account for the solitary work environment. He failed to account for the often having deficiencies of concentration that result in failure to complete tasks in a timely manner. When he tried to list what the physical and mental demands of the job, he didn't even list what the DOT number was. I mean, we appended to our decision what we think it is. We think it's the DOT number that's at the end of our brief, but the judge didn't identify what it was. In Pinto, at least they had a vocational expert, and the judge asked him, identify what her past work was. Tell us what it was. Can she go back and do it? And then he said his analysis was in the vocational expert's head. In this case, it's even a step removed from Pinto. The judge, he doesn't give us any analysis. He doesn't ask the vocational expert. One's not required a step four, but the Social Security ruling 8262 says in many cases the judge must need one because the record is not going to be complete. He didn't give us a record for you to review to see what the mental demands were. Now, we supplied them and shown that she can't do that work with those cases. Every case where there's been a finding by the judge of often deficiencies of concentration result in failure to complete tasks in a timely manner, and where there's been a vocational expert testimony in that case that they can't work, there's been an award of benefits. Now, there's another series of cases where the judge found that, but the courts had found that it was accommodated by some way or another. But in that case, the V.E. wasn't asked that specific question. In this case, the V.E. by hypothetical was asked a specific question. So we have a tie-up, and all those cases that were cited, there's like 13 of them, they were paid benefits. In those cases where we have this fact pattern, where the V.E. wasn't asked that question, then the court says we have to wrestle with whether or not it was accommodated. In this case, we don't even have to wrestle with whether it was accommodated because the V.E. was asked specifically that question, as it has been in other courts that were cited. Thank you, Your Honor. Roberts. Thank you, Mr. Cree. Thank you, Mr. Rodriguez. This case is submitted for decision.
judges: Reavley , Tashima, Paez